1
2
3
4
5
6
7
8

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN DIEGO COASTKEEPER, a California non-profit corporation, COASTAL ENVIRONMENTAL RIGHTS FOUNDATION, a California non-profit corporation, | Civil Case No. 3:19-cv-00953-DMS-WVG |
| Plaintiffs, | **CONSENT DECREE** |
| vs. | **(Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq*.)** |
| MILLER BARZ ENTERPRISES, INC, a California Corporation, doing business as Allways Metal Recycling, | |
| Defendant. | |

21
22
23
24
25
26
27
28

# CONSENT DECREE

The following Consent Decree is entered into by and between San Diego Coastkeeper ("Coastkeeper") and Coastal Environmental Rights Foundation ("CERF", collectively "Plaintiffs") and Miller Barz Enterprises, Inc, doing business as Allways Metal Recycling ("Allways" or "Defendant"). The entities entering into this Consent Decree are each an individual "Settling Party" and collectively the "Settling Parties."

**WHEREAS,** Coastkeeper is a 501(c)(3) non-profit public benefit corporation organized under the laws of the State of California, with its main office in San Diego, California;

**WHEREAS,** Coastkeeper is dedicated to the preservation, protection, and defense of the rivers, creeks, and coastal waters of San Diego County from all sources of pollution and degradation;

**WHEREAS,** CERF is a non-profit organization founded by surfers in North San Diego County and active throughout California's coastal communities;

**WHEREAS,** CERF was established to aggressively advocate, including through litigation, for the protection and enhancement of coastal natural resources and the quality of life for coastal residents, and one of CERF's primary areas of advocacy is water quality protection and enhancement;

**WHEREAS**, Allways, is the owner and operator of a scrap recycling facility located at 1411-1425 N. Magnolia Avenue, El Cajon, California, 92020, hereinafter referred to as the "Facility";

WHEREAS, Allways currently holds a lease for the property located at 1411-1425 N. Magnolia Avenue, El Cajon, California, 92020 ("Property");

**WHEREAS**, Plaintiffs' members live and/or recreate in and around Forester Creek, the San Diego River, and the Pacific Ocean, area waters which Plaintiffs allege receive discharges from the Facility;

**WHEREAS,** the discharges from the Facility are regulated by the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001

[State Water Resources Control Board] Water Quality Order No. 92-12-DWQ, as amended by Order No. 97-03-DWQ ("1997 Storm Water Permit") and Order No. 2014-0057-DWQ ("2014 Storm Water Permit"), and the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.* ("Clean Water Act" or "CWA");

**WHEREAS**, on October 23, 2018, Plaintiffs sent Allways, the United States Environmental Protection Agency ("EPA"), EPA Region IX, the State Water Resources Control Board ("State Board"), and the San Diego Regional Water Quality Control Board ("Regional Board") a notice of intent to file suit ("Notice Letter") under Sections 505(a) and (b) of the Clean Water Act, 33 U.S.C. §§ 1365(a) and (b). The Notice Letter alleged violations of Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), and violations of the 1997 Storm Water Permit and 2014 Storm Water Permit at the Facility;

**WHEREAS**, on May 22, 2019, Plaintiffs filed a complaint against Allways in the United States District Court, Southern District of California (Case No. 3:19-cv-00953-DMS-WVG), alleging violations of Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), and violations of the Storm Water Permit at the Facility ("Complaint");

**WHEREAS**, Plaintiffs allege Allways to be in violation of the substantive and procedural requirements of the 1997 Storm Water Permit, the 2014 Storm Water Permit, and the Clean Water Act with respect to the Facility;

**WHEREAS**, Allways denies all allegations in the Notice Letter and Complaint relating to the Facility;

**WHEREAS**, Plaintiffs and Allways have agreed that it is in the Settling Parties' mutual interest to enter into a Consent Decree setting forth terms and conditions appropriate to resolving the allegations set forth in the Complaint without further proceedings;

**WHEREAS**, all actions taken by Allways pursuant to this Consent Decree shall be made in compliance with all applicable federal and state laws and local rules and regulations.

/././

**NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE
SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS
FOLLOWS:**

1.     The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a) of the Clean Water Act, 33 U.S.C. § 1365(a);

2.     Venue is appropriate in the Southern District of California pursuant to Section 505(c)(1) of the Clean Water Act, 33 U.S.C. § 1365(c)(1), because the Facility is located within this District;

3.     The Complaint states claims upon which relief may be granted pursuant to Section 505(a)(1) of the Clean Water Act, 33 U.S.C. § 1365(a)(1);

4.     Plaintiffs have standing to bring this action;

5.     The Court shall retain jurisdiction over this matter for purposes of enforcing the terms of this Consent Decree for the term of the Consent Decree, or as long thereafter as is necessary for the Court to resolve any motion to enforce this Consent Decree.

## I.     OBJECTIVES

6.     It is the express purpose of the Settling Parties entering into this Consent Decree to further the objectives set forth in the Clean Water Act, 33 U.S.C. §§ 1251, *et seq.*, and to resolve those issues alleged by Plaintiffs in their Complaint. In light of these objectives and as set forth fully below, Defendant agrees to comply with the provisions of this Consent Decree and to comply with the requirements of the 2014 Storm Water Permit and all applicable provisions of the Clean Water Act. Specifically, Defendant agrees to comply with Receiving Water Limitation VI.A. in the 2014 Storm Water Permit which requires that Defendant "shall ensure that industrial storm water discharges and authorized Non-Storm Water Discharges ("NSWDs") do not cause or contribute to the exceedance of any applicable water quality standards in any affected receiving water," and Effluent Limitation V.A. of the 2014 Storm Water Permit which requires that Defendant "shall implement Best Management Practices ("BMPs") that comply with the BAT/BCT requirements of the [2014 Storm Water Permit] to reduce or prevent

discharges of pollutants in [Defendant's] storm water discharge in a manner that reflects best industry practice considering technological availability and economic practicability and achievability."  Defendant shall develop and implement BMPs necessary to achieve compliance with BAT/BCT standards and with the applicable water quality standards as those terms are defined by the 2014 Storm Water Permit.

## II.   AGENCY REVIEW AND TERM OF CONSENT DECREE

7.   Plaintiffs shall submit this Consent Decree to the United States Department of Justice and the EPA (collectively "Federal Agencies") within three (3) days of the final signature of the Settling Parties for agency review consistent with 40 C.F.R. § 135.5. The agency review period expires forty-five (45) days after receipt by both agencies, as evidenced by written acknowledgement of receipt by the agencies or the certified return receipts, copies of which shall be provided to Defendant if requested. In the event that the Federal Agencies object to entry of this Consent Decree, the Settling Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies within a reasonable amount of time.

8.   The term "Effective Date" as used in this Consent Decree shall mean the day the Court enters this Consent Decree.

9.   This Consent Decree shall terminate the earlier of: (1) three years after the Effective Date ("Termination Date"), or (2) upon expiration of Defendant's lease for the Property, unless there is a prior ongoing, unresolved dispute regarding Defendant's compliance with this Consent Decree.

10.   Plaintiffs may conduct an inspection of the Facility up to forty-five (45) days prior to the Termination Date. The inspection shall be conducted according to the rules applicable to annual site inspections described below.

## III.   COMMITMENTS OF THE SETTLING PARTIES

### A. Storm Water Pollution Control Best Management Practices.

11.   It is the express purpose of the Settling Parties entering into this Agreement to further the objectives set forth in the Clean Water Act and to resolve those issues

alleged by Plaintiffs in their Complaint. In light of these objectives and as set forth fully below, Defendant agrees, *inter alia*, to comply with the provisions of this Agreement, the requirements of the Storm Water Permit, and all applicable provisions of the CWA.

12.     In addition to maintaining the current structural and non-structural Best Management Practices ("BMPs") described in the Facility's Storm Water Pollution Prevention Plans ("SWPPP"), Defendant shall develop and implement BMPs necessary to comply with the provisions of this Agreement and the Storm Water Permit, including but not limited to those that achieve the Best Available Technology Economically Achievable ("BAT") and the Best Conventional Treatment Technology ("BCT") and to comply with the Storm Water Permit's Receiving Water Limitations.

13.     The list of BMPs that Defendant agrees to develop and/or implement for the Facility as part of this Agreement is attached hereto as Exhibit A.

**B. Discharge Locations and Storm Water Sampling.**

14.     Discharge Locations. The current and future storm water sample locations for the Facility are identified in Exhibit B.  Should the future storm water sample locations change from what is presently depicted on Exhibit B, Defendant will provide Plaintiffs with updated Exhibits.

15.     Sampling. The following storm water monitoring procedures shall be implemented at the Facility:

15.1 Frequency. During the life of this Agreement, Defendant shall collect samples from all discharge locations at the Facility from a minimum of four (4) "qualified storm events" that occur in a reporting year such that Defendant collects two (2) samples during the first half of the reporting year and two (2) samples during the second half of the reporting year. A "qualified storm event" or "QSE" is a storm event that produces a discharge from at least one drainage area and is preceded by forty-eight (48) hours with no discharge from any drainage area. If, prior to March 1, Defendant has collected samples from two (2) or fewer qualified storm events, Defendant shall collect samples

during as many qualified storm events as necessary until a minimum of 4 storm events have been sampled for the reporting year.  No two (2) samples may be from the same storm event.

15.2 <u>Contained or Stored Storm Water</u>. To the extent water is stored or contained, Defendant shall sample the stored or contained water at the Facility before it is released or discharged even if not during operating hours.

15.3 <u>Parameters</u>. Defendant shall analyze each storm water sample collected from a Sample Location for the contaminants set forth in the Table 1 Numeric Limits.

15.4 <u>Laboratory</u>. A laboratory accredited by the State of California shall analyze all samples collected pursuant to this Agreement.

15.5 <u>Detection Limits</u>. The laboratory shall use analytical methods adequate to detect the individual contaminants at or below Table 1 Numeric Limits.

15.6 <u>Hold Time</u>. All samples collected from the Facility shall be delivered to the laboratory as necessary to ensure that sample "hold time" is not exceeded for each contaminant sampled. For field measurements, such as pH, Defendant shall use portable instruments, and not pH paper, which shall be calibrated and used according to manufacturers' instructions and approved industry methodology, i.e., 40 C.F.R., Part 136.

15.7 <u>Results</u>. Defendant shall request that sample analysis results be reported to them within ten (10) days of laboratory receipt of the sample, or as soon as possible without incurring "rush" charges.

15.8 <u>Reporting</u>. Defendant shall provide Plaintiffs with the complete laboratory results, including a copy of the Quality Assurance/Quality Control and the laboratory report for all samples described and taken in accordance with the samples identified in paragraphs 15.1 and 15.2 collected at the Facility, within five (5) business days of receiving the results.

/././

## C. Reduction of Pollutants in Discharges.

16.    Contaminant Reduction. Unless otherwise provided by this Agreement, Defendant shall develop and implement BMPs to reduce pollutants in storm water discharges from the Facility to levels below those in Table 1 ("Numeric Limits").[1]

**Table 1. Numeric Limits**

| Pollutant | Values |
|---|---|
| Total Suspended Solids | 100 mg/L |
| Total Recoverable Zinc* | 0.12 mg/L |
| Total Recoverable Copper* | 0.013 mg/L |
| Oil and Grease | 15 mg/L |
| Total Recoverable Aluminum | 0.750 mg/L |
| Total Recoverable Iron | 0.3 mg/L |
| Nitrate + Nitrite Nitrogen | 0.68 mg/L |
| Total Recoverable Lead* | 0.065 mg/L |
| Selenium | 0.005 mg/L |
| Phosphorous | 0.1 mg/L |
| pH | 6.5-8.5    s.u. |

17.    Action Plan for Table 1 Exceedances.  If Defendant's monitoring reveals an exceedance of the numeric limits specified in Table 1 for any one constituent during a wet season, Defendant shall submit a plan to Plaintiffs for reducing the level of pollutant to Table 1 Limits ("Action Plan"). The Action Plan for the Facility shall be prepared by a Qualified Industrial Storm Water Professional ("QISP") and must be submitted to Plaintiffs within thirty (30) days of Defendant's receipt of sampling data showing exceedances of Table 1 Limits.[2] Any Action Plan required by this paragraph, shall be prepared by a QISP and must be submitted to Plaintiffs by June 1, or within thirty (30) days of Defendant's receipt of sampling data showing the exceedance of the limit for the same pollutant listed in Table 1 Numeric Limits, whichever is earlier. Submitting an Action Plan that does not include all of the requirements in this paragraph will be considered a missed deadline.

---

[1] The Numeric Limits for metals marked with asterisk are hardness dependent.

[2] The Action Plan discussed in this Consent Decree is separate and distinct from any "Action Plan" discussed in the Storm Water Permit.

17.1 <u>Action Plan Requirements</u>. An Action Plan shall include at a minimum: (1) the identification of the contaminant(s) discharged in excess of the numeric value(s); (2) an assessment of the source of each contaminant discharged in excess of the numeric value(s); (3) the identification of additional BMPs, including either preventing the exposure of pollutant and pollutant sources to storm water and/or further treatment of storm water prior to discharge from the Facility that will reduce pollutant concentrations to those below Table 1 Numeric Limits; and (4) time schedules for implementation of the proposed BMPs (if any). The time schedule(s) for implementation of additional BMPs shall ensure that all BMPs are implemented as soon as possible but no more than ninety (90) days after Plaintiffs provide Defendant comments on the Action Plan, unless the Settling Parties agree on a later date based on the time needed to design, permit, procure, and install the necessary equipment, or implementation within the required time period is not possible due to Force Majeure, as defined below. Plaintiffs will not unreasonably withhold agreement to extend the deadline, as needed. Any disputes over the deadline for implementation of additional BMPs identified in an Action Plan shall be resolved pursuant to the dispute resolution provisions of this Agreement, set out in Article VI below.

17.2 <u>Action Plan Review</u>. Plaintiffs shall have thirty (30) days upon receipt of Defendant's Action Plan to provide Defendant with comments on the Action Plan. Within twenty-one (21) days of Defendant's receipt of Plaintiffs' comments on the Action Plan, Defendant shall consider Plaintiffs' comments and shall either incorporate them into the Action Plan or, if Defendant declines to accept one or more of Plaintiffs' comments, provide Plaintiffs with a written explanation of the grounds for rejection.

17.3 Disputes regarding the adequacy of a particular BMP shall not impact the schedule for implementing any other BMP set forth in the Action Plan. Any

disputes as to the adequacy of the Action Plan shall be resolved pursuant to the dispute resolution provisions of this Agreement, set out in Article VI below.

18.    Defendant shall contact Plaintiffs to request an extension of any deadline set forth in this Agreement, if necessary, at least fourteen (14) days prior to the deadline at issue. Failure to request an extension in this timeframe will be considered a missed deadline. Plaintiffs' consent to Defendant's requested extension shall not be unreasonably withheld.

19.    Defendant shall revise its SWPPP and/or Monitoring & Reporting Plans ("M&RP") as applicable within thirty (30) days of receipt of Plaintiffs' Action Plan comments to reflect the changes and/or additional BMPs set forth in the Action Plan. Defendant shall notify Plaintiffs in writing when the final Action Plan has been completely implemented, and the SWPPP and/or M&RP have been revised.

**D. <u>Visual Observations.</u>**

20.    All visual observations shall be conducted in accordance with the terms of the Storm Water Permit and this Agreement, and shall include at least the following:

20.1 <u>Storm Water Discharge Observations</u>. During the life of this Agreement, Defendant shall conduct visual observations at each point where storm water is discharged during each Qualifying Rain Event.

20.2 <u>Non-Storm Water Discharge Observations</u>. During the life of this Agreement, Defendant shall conduct monthly non-storm water visual observations at each discharge point.

21.    Defendant shall maintain logs of the visual observations, which shall be available for review on site for a period of 5 years, or until termination of the Consent Decree, in conformance with the Storm Water Permit, and shall make these records available for Plaintiffs' review via email within two business days of the request.

**E. <u>Employee Training.</u>**

22.    Within forty-five (45) days of the Effective Date, Defendant shall conduct

additional employee training in order to familiarize employees at the Facility with the requirements of the Storm Water Permit and this Agreement. The training program shall include use of written training materials needed for effective implementation of the training program. Defendant shall also ensure that there are a sufficient number of employees assigned to implement the BMPs and conduct other compliance activities required by the Storm Water Permit and this Agreement, and that these employees are properly trained to perform the required activities.

23. The training program shall require at least the following:

   23.1 <u>Non-Storm Water Discharge Training</u>. Defendant shall train employees on the Storm Water Permit's prohibition of non-storm water discharges, so that employees know what non-storm water discharges are, which improper practices may produce non-storm water discharges at the Facility, and how to detect and prevent them;

   23.2 <u>BMP Training</u>. Defendant shall train employees on BMP implementation and maintenance to ensure that BMPs are implemented effectively to prevent or minimize the exposure of pollutants to storm water, to prevent or minimize the discharge of contaminated storm water, and to ensure the proper treatment of storm water at the Facility;

   23.3 <u>Sampling Training</u>. Defendant shall designate an adequate number of employees or consultants to ensure the collection of storm water samples from each discharge location as required by this Agreement and/or the Storm Water Permit. The training shall include the proper sampling protocols, including chain of custody requirements, to ensure storm water samples are properly collected, stored, and submitted to a certified laboratory.

   23.4 <u>Visual Observation Training</u>. Defendant shall provide training to all individuals performing visual observations at the Facility pursuant to this Agreement and/or the Storm Water Permit that includes when visual observations are required, the different types of visual observations required,

and instruction on proper record keeping under the Storm Water Permit.

24.     Training shall be provided on an annual basis, or as otherwise required to ensure compliance with the terms of this Agreement, by a private consultant or a representative of Defendant who is familiar with the requirements of this Agreement and the Storm Water Permit. The training shall be repeated as necessary to ensure that employees are familiar with the requirements of this Agreement, the Storm Water Permit, and the Facility's SWPPP and M&RP, as appropriate to the particular employee's job descriptions. Any new employee who is responsible for implementation of any portion of the SWPPP, the M&RP, or compliance with other terms of the Storm Water Permit or Agreement shall receive training within ten (10) business days after being hired, or before being responsible for compliance with the terms of the Storm Water Permit or Agreement.

25.     Defendant shall maintain training records to document compliance with Article II.E of this Agreement and shall make these records available for Plaintiffs' review at the Facility upon request. The Training Program shall be specified in the SWPPP and Defendant shall modify the SWPPP as necessary to reflect the training program required by this Agreement.

## F. **Storm Water Pollution Prevention Plan and Monitoring and Reporting Plan.**

26.     Within sixty (60) days of the Effective Date of this Agreement, Defendant shall revise the Facility's SWPPP and/or M&RP as applicable to include:

    26.1 All BMPs that are currently utilized at the Facility;

    26.2 All BMPs identified and developed pursuant to this Agreement and/or the Storm Water Permit;

    26.3 The specific individual(s) or positions responsible for compliance with the Storm Water Permit and this Agreement;

    26.4 A detailed site map that includes at a minimum all information required by the Storm Water Permit and this Agreement;

    26.5 A description of each industrial activity, all potential pollutant sources, and

1    each potential pollutant associated with each industrial activity and/or

2    pollutant source;

3        26.6 Incorporate the requirements of the Storm Water Permit and this Agreement.

4        27.    <u>Additional and Ongoing Revisions to SWPPP and/or M&RP</u>. Defendant

5    shall revise the SWPPP and/or M&RP if there are any changes in the Facility's

6    operations that may possibly affect the quality of storm water discharges at the Facility,

7    including but not limited to changes to storm water discharge point(s)/sample location(s)

8    or changes or additions to the BMPs at the Facility resulting from an Action Plan.

9        28.    <u>Commenting on Revised SWPPP and/or M&RP</u>. Defendant shall submit any

10   revised SWPPP and/or M&RP to Plaintiffs within five (5) days of completion.

11       28.1 For any SWPPP or M&RP revisions that are not the result of an Action Plan,

12       Plaintiffs shall provide comments, if any, to Defendant within thirty (30) days

13       of receipt of any revised SWPPP and M&RP. Within thirty (30) days of

14       receiving comments from Plaintiffs, Defendant shall incorporate Plaintiffs'

15       comments into any revised SWPPP and/or M&RP or shall justify in writing

16       why any comment is not incorporated. Any disputes as to the adequacy of the

17       SWPPP and/or M&RP shall be resolved pursuant to the dispute resolution

18       provisions of this Agreement, set out in Article VI below.

19   **IV.   COMPLIANCE MONITORING AND REPORTING**

20       29.    <u>Site Inspections</u>. Each Reporting Year for the life of this Agreement,

21   Plaintiffs and their representatives may conduct up to two (2) noticed site inspections per

22   Reporting Year. The site inspections shall occur during normal business hours, and

23   Plaintiffs shall provide Defendant with three (3) days' notice of an intended inspection. If

24   a Wet Season inspection is noticed, Plaintiffs will continue to follow the weather

25   forecast, and will confirm the Wet Season inspection at least twenty-four (24) hours prior

26   to the start of the inspection in an effort to ensure Plaintiffs conduct their inspection

27   during a QSE. Plaintiffs will make efforts to conduct their inspection during a QSE, but a

28   lack of a QSE will not prevent Plaintiffs from conducting the inspection. During

inspections, Plaintiffs' representatives will wear safety goggles, hard hats, vests, and appropriate clothing and footwear and remain in the presence of Defendant's representatives at all times. Plaintiffs' inspection team shall consist of no more than six (6) persons. Plaintiffs shall be allowed to take photographs and/or record video(s) of the Facility during the inspection.

30.    During the site inspection, Plaintiffs and/or their representatives shall be allowed access to the Facility's SWPPP, M&RP, and other monitoring records, reports, and all sampling data produced in accordance with paragraphs 15.1 and 15.2 of this Agreement. In addition, during the site inspection, Plaintiffs and/or their representatives may collect split samples of discharges from QSEs, even if outside of the first four hours of discharge, from the Facility. Plaintiffs shall provide Defendant with properly preserved split samples.  Any samples collected by Plaintiffs shall be submitted to a certified California laboratory for analysis. Any onsite measurements such as pH shall be taken by a properly trained operator with properly calibrated instruments.  Defendant shall have an opportunity to take concurrent measurements using their own equipment.  Copies of the complete laboratory reports shall be provided to Defendant within five (5) business days of receipt. Plaintiffs shall bear all costs of inspection, sampling, and analysis.

31.    Reporting and Documents. During the life of this Agreement, Defendant shall copy Plaintiffs on all documents related to water quality at the Facility that are submitted to the Regional Board, the State Board, and/or any State or local agency or municipality. Such reports and documents shall be provided to Plaintiffs concurrently as they are sent to the agencies and/or municipalities. Any correspondence related to Defendant's compliance with the Storm Water Permit or storm water quality received by Defendant from any regulatory agency, State or local agency, county or municipality shall be provided to Plaintiffs within ten (10) days of receipt by Defendant(s).

32.    Compliance Monitoring and Oversight.  Defendant shall pay a total of five thousand dollars ($5,000) to compensate Plaintiffs for costs and fees to be incurred for monitoring the Facility's compliance with this Agreement.  Payment shall be made

within thirty (30) days of the final installment payment made pursuant to Paragraph 35, payable to Coastal Environmental Rights Foundation via certified U.S. Mail or commonly accepted carrier to 1140 South Coast Highway 101 Encinitas, California 92024.

33. <u>Action Plan Payment</u>.  Defendant shall pay three thousand dollars ($3,000) per year for Plaintiffs' reasonable costs to review any Action Plan submitted.  Payment shall be made within five (5) business days of the submittal of an Action Plan and payable to Coastal Environmental Rights Foundation via certified U.S. Mail or commonly accepted carrier to 1140 South Coast Highway 101 Encinitas, California 92024.

## V.  <u>Environmental Project, Reimbursement of Litigation Fees and Costs, and Stipulated Payments</u>

34. <u>Environmental Project</u>. To remediate the alleged environmental harms resulting from non-compliance with the Storm Water Permit alleged in the Complaint, Defendant agrees to make a payment totaling $8,500 to San Diego Audubon to fund environmental project activities that will reduce or mitigate the impacts of storm water pollution from industrial activities on the Southern California Bight and its tributaries. Payment shall be made payable to: San Diego Audubon via certified U.S. Mail to Chris Redfern, San Diego Audubon 4010 Morena Blvd St 100 San Diego, CA 92117 within ten (10) business days of the Effective Date.

35. <u>Reimbursement of Fees and Costs</u>. Defendant shall pay a total of twenty thousand dollars ($20,000) to Coast Law Group, LLP and San Diego Coastkeeper to reimburse investigation fees and costs, expert/consultant fees and costs, and reasonable attorneys' fees incurred as a result of investigating and preparing the lawsuit and negotiating this Agreement. Payments shall be made to: Coast Law Group, LLP, Attn: Livia Borak Beaudin via certified U.S. Mail or commonly accepted carrier to 1140 South Coast Highway 101 Encinitas, California 92024. Payments shall be made in six equal installments and begin within 30 days of the Effective Date; thereafter, payment shall be

made every 30 days until paid in full.

36.    Stipulated Payments: Defendant shall make a remediation payment of One Thousand Five Hundred dollars ($1,500.00) for each missed deadline included in this Agreement. Payments for a missed deadline shall be used to fund environmental project activities that will benefit the Southern California Bight and its tributaries. Defendant shall have thirty (30) days to cure any missed deadline or, in the alternative, invoke the dispute resolution procedures set forth below. Unless dispute resolution procedures have been invoked, Defendant agrees to make the stipulated payment within thirty (30) days of a missed deadline to San Diego Audubon via U.S. Mail to Chris Redfern, San Diego Audubon 4010 Morena Blvd St 100 San Diego, CA 92117.  Defendant shall provide Plaintiffs with a copy of each such payment at the time it is made.

## VI.    DISPUTE RESOLUTION

37.    This Court shall retain jurisdiction over this matter to enforce this Consent Decree.

38.    Meet and Confer. A party to this Agreement shall invoke the dispute resolution procedures of this Section by notifying all other Settling Parties in writing of the matter(s) in dispute. The Settling Parties shall then meet and confer in good faith (either telephonically or in person) in an attempt to resolve the dispute informally over a period of ten (10) business days from the date of the notice. The Settling Parties may elect to extend this time in an effort to resolve the dispute without court intervention.

39.    Dispute Resolution. If the Settling Parties cannot resolve a dispute by the end of meet and confer informal negotiations, the Settling Parties may agree to enter into an Alternative Dispute Resolution process. The party initiating the dispute resolution provision may invoke formal dispute resolution by filing a motion before the United States District Court for the Southern District of California. The Settling Parties agree to request an expedited hearing schedule on the motion if requested by any Settling Party.

40.    Burden of Proof. The burden of proof for formal dispute resolution shall be in accordance with applicable law. Notwithstanding the foregoing, in the event of any

1   disagreement or dispute between Plaintiffs and Defendant over the necessity or

2   appropriateness of implementing any particular BMP or set of BMPs, Defendant shall

3   bear the burden of demonstrating that its BMPs, collectively, constitute BAT/BCT for the

4   Facility, or that it is in compliance with the terms of this Agreement. Plaintiffs shall not

5   be required to prove that Defendant's BMPs do not constitute BAT/BCT.

6        41.   <u>Costs and Fees</u>. Litigation costs and fees incurred in conducting the meet

7   and confer or otherwise addressing and/or resolving any dispute, including an alleged

8   breach of this Agreement, shall be awarded in accord with the standard established by

9   Section 505 of the Clean Water Act, 33 U.S.C. §§1365 and 1319, and case law

10   interpreting that standard.

11        42.   <u>Force Majeure.</u>  No Settling Party shall be considered to be in default in the

12   performance of any of its obligations under this Agreement when performance becomes

13   impossible due to circumstances beyond the Settling Party's control, including Force

14   Majeure, which includes any act of god, war, fire, earthquake, windstorm, flood or

15   natural catastrophe; civil disturbance, vandalism, sabotage, or terrorism; restraint by court

16   order or public authority or agency; inability to proceed due to pending litigation under

17   the California Environmental Quality Act; action or non-action by, or inability obtain the

18   necessary authorizations, approvals, or permits from, any governmental agency; or

19   inability to obtain equipment or materials from the marketplace if such materials or

20   equipment are not reasonably available, though the cost of such material or equipment is

21   not a factor in whether it is reasonably available. Impossibility and/or Force Majeure

22   shall not include normal inclement weather, economic hardship, or inability to pay.  Any

23   party seeking to rely upon this paragraph to excuse or postpone performance shall have

24   the burden of establishing that it could not reasonably have been expected to avoid the

25   impossibility or Force Majeure event and which by exercise of due diligence has been

26   unable to overcome the failure or performance.  Delay in compliance with a specific

27   obligation under this Agreement due to impossibility and/or Force Majeure as defined in

28   this paragraph shall not excuse or delay compliance with any or all other obligations

required under this Agreement.

42.1 If Defendant claims compliance was or is impossible, it shall notify Plaintiffs in writing as soon as possible, but in no event more than five (5) business days of the date that Defendant learns of the event or circumstance that caused or would cause a violation of this Agreement (hereinafter referred to as the "Notice of Nonperformance").

42.2 Within ten (10) business days of sending the Notice of Nonperformance, Defendant shall send Plaintiffs a detailed description of the reason for the nonperformance and the specific obligations under the Agreement that are or have been affected by the Force Majeure. Defendant shall describe the anticipated length of time the delay may persist, the cause or causes of the delay, the measures taken or to be taken by Defendant to prevent or minimize the delay, the schedule by which the measures shall be implemented, and the anticipated date of compliance. Defendant shall adopt all reasonable measures to avoid and minimize such delays.

42.3 The Settling Parties shall meet and confer in good faith concerning the non-performance and, where the Settling Parties concur that performance was or is impossible due to an event or matter covered under the Force Majeure provisions of this Agreement, despite the timely good faith efforts of Defendant, new deadlines shall be established.

42.4 If Plaintiffs disagree with Defendant's Notice of Nonperformance, or in the event that the Settling Parties cannot timely agree on the terms of new performance deadlines or requirements, either party shall have the right to invoke the dispute resolution procedure pursuant to Article VI. In such proceeding, Defendant shall bear the burden of proving that any delay in performance of any requirement of this Agreement was caused or will be caused by impossibility and/or Force Majeure and the extent of any delay attributable to such circumstances.

## VII.   MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE

43.   <u>Plaintiffs' Release</u>. Upon the Effective Date of this Agreement, CERF and Coastkeeper, on their own behalf and on behalf of their current and former officers, directors, employees, and each of their successors and assigns, and its agents, attorneys, and other representatives releases all persons including, without limitation, Defendant (and each of its direct and indirect parent and subsidiary companies and affiliates, and their respective current and former officers, directors, members, employees, shareholders, and each of their predecessors, successors, and assigns, and each of their agents, attorneys, consultants, and other representatives) from and waive all claims alleged in the Notice Letter and/or Complaint up to the termination of this Agreement.

44.   <u>Defendant's Release</u>. Upon the Effective Date of this Agreement, Defendant, on its own behalf and on behalf of its current and former officers, directors, employees, members, and each of their successors and assigns, and their agents, attorneys, and other representatives releases Plaintiffs (and their current and former officers, directors, employees, members, parents, subsidiaries, and affiliates, and each of their successors and assigns, and its agents, attorneys, and other representatives) from and waive all claims which arise from or pertain to this action, including all claims for fees (including fees of attorneys, experts, and others), costs, expenses, or any other sum incurred or claimed for matters related to Plaintiffs' Notice Letter and Complaint up to the termination of this Agreement by the Court.

45.   Nothing in this Agreement limits or otherwise affects any Party's right to address or take any position that it deems necessary or appropriate in any formal or informal proceeding before the State Board, Regional Board, EPA, or any other administrative body on any other matter relating to Defendant's compliance with the Storm Water Permit or the Clean Water Act occurring or arising after the Effective Date of this Agreement.

## VIII.   MISCELLANEOUS PROVISIONS

46.   <u>No Admission of Liability</u>. Neither this Agreement, the implementation of

additional BMPs, nor any payment pursuant to the Agreement shall constitute or be construed as a finding, adjudication, admission, or acknowledgment of any fact, law, or liability, nor shall it be construed as an admission of violation of any law, rule, or regulation. Defendant maintains and reserves all defenses it may have to any alleged violations that may be raised in the future.

47.   <u>Construction</u>. The language in all parts of this Agreement shall be construed according to its plain and ordinary meaning, except as to those terms defined in the Storm Water Permit, the Clean Water Act, or specifically herein.

48.   <u>Choice of Law</u>. The laws of the United States shall govern this Agreement.

49.   <u>Severability</u>. In the event that any provision, paragraph, section, or sentence of this Agreement is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

50.   <u>Correspondence</u>: Unless specifically provided for in this Consent Decree, all notices required herein or any other correspondence pertaining to this Consent Decree shall be sent by U.S. mail or electronic mail as follows:

<u>If to Plaintiff Coastkeeper:</u>

San Diego Coastkeeper
Attn: Matt O'Malley
2825 Dewey Rd, Suite 207
San Diego, CA 92106
Email: matt@sdcoastkeeper.org

<u>If to Plaintiff CERF:</u>

Coastal Environmental Rights Foundation
Attn: Erika Cueva
1140 South Coast Highway 101
Encinitas, CA 92024
Email: erika@cerf.org

With Copy to:

Coast Law Group LLP
Attn: Livia Beaudin
1140 South Coast Hwy 101
Encinitas, CA 92024
Email: livia@coastlawgroup.com

If to Miller Barz Enterprises, Inc:

Todd M. Abbott, Esquire
2127 Olympic Parkway, Suite 1006, Number 348
Chula Vista, California 91915
Email: tmabbottlaw@gmail.com

With Copy to:

Todd M. Abbott, Esquire
2127 Olympic Parkway, Suite 1006, Number 348
Chula Vista, California 91915
Email: tmabbottlaw@gmail.com

51.     Notifications of communications shall be deemed submitted three (3) business days after having been sent via U.S. mail or the day of sending notification or communication by electronic mail. Any change of address or addresses shall be communicated in the manner described above for giving notices.

52.     **Effect of Consent Decree.** Except as provided herein, Plaintiffs do not, by their consent to this Consent Decree, warrant or aver in any manner that Defendant's compliance with this Consent Decree will constitute or result in compliance with any federal or state law or regulation. Nothing in this Consent Decree shall be construed to affect or limit in any way the obligation of Defendant to comply with all federal, state, and local laws and regulations governing any activity required by this Consent Decree.

53.     **Counterparts.** This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document. Telecopy, email of a .pdf signature, or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

54. <u>Modification of the Consent Decree</u>. This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Settling Parties. If any Settling Party wishes to modify any provision of this Consent Decree, the Settling Party must notify the other Settling Party in writing at least twenty-one (21) days prior to taking any step to implement the proposed change.

55. <u>Full Settlement.</u> This Consent Decree constitutes a full and final settlement of this matter.

56. <u>Integration Clause</u>. This is an integrated Consent Decree. This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the Settling Parties and expressly supersedes any and all prior oral or written agreements, covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

57. <u>Authority of Counsel.</u> The undersigned representatives for Plaintiffs and Defendant each certify that he/she is fully authorized by the party whom he/she represents to enter into the terms and conditions of this Consent Decree.

58. <u>Authority of Parties.</u> The Settling Parties certify that their undersigned representatives are fully authorized to enter into this Consent Decree, to execute it on behalf of the Settling Parties, and to legally bind the Settling Parties to its terms.

59. The Settling Parties, including any successors or assigns, agree to be bound by this Consent Decree and not to contest its validity in any subsequent proceeding to implement or enforce its terms.

**IN WITNESS WHEREOF**, the undersigned have executed this Consent Decree as of the date first set forth below.

APPROVED AS TO CONTENT

Dated: _____8/7/19_____     By: _____

Name: <u>Catherine Stiefel</u>
Title: <u>President</u>
San Diego Coastkeeper

Dated:    August 6, 2019         By: _____
                                 Name: Sara Kent
                          T      Title: Programs Director
                                 Coastal Environmental Rights Foundation


Dated:    06/26/2019             By: _____
                                 Name: Daniel S. Miller
                          T      Title: President/CEO
                                 Miller Barz Enterprises, Inc.


APPROVED AS TO FORM

Dated:    August 6, 2019         By: s/ Livia Borak Beaudin
                                 Livia Borak Beaudin
                                 Coast Law Group LLP
                                 Attorneys for CERF


Dated:    _____        By: _____
                                 Matt O'Malley
                                 Attorneys for San Diego Coastkeeper


Dated:    06/26/2019             By: _____
                                 Todd Abbott
                                 Attorney for Miller Barz Enterprises, Inc.


**IT IS SO ORDERED.**


Date: _____            _____
                                 Judge Dana M. Sabraw
                                 United States District Court Judge
                                 Southern District of California

1

Dated: _____

2

By:_____

Name:_____

3   T   Title:_____

Coastal Environmental Rights Foundation

4

5

Dated: _____

6

By: _____

Name:_____

7   T   Title:_____

Miller Barz Enterprises, Inc.

8

9

10

11   APPROVED AS TO FORM

12

Dated: _____

By: _____

13

Livia Borak Beaudin

14

Coast Law Group LLP

Attorneys for CERF

15

16   Dated: 7/10/19

By: _____

17

Matt O'Malley

Attorneys for San Diego Coastkeeper

18

19

20

Dated: _____

By: _____

21

Todd Abbott

Attorney for Miller Barz Enterprises, Inc.

22

23

**IT IS SO ORDERED.**

24

25

Date: ___9/20/19___

26

Judge Dana M. Sabraw

United States District Court Judge

27

Southern District of California

28

---

Consent Decree | 23 | Civil Case No. 3:19-cv-00953-DMS-WVG

# EXHIBIT A

Exhibit "A"

1. Good Housekeeping. The following good housekeeping measures will be implemented as follows:

- Observe all outdoor areas associated with industrial activity including stormwater discharge locations, drainage areas, conveyance systems, waste handling/disposal areas, and perimeter areas impacted by off-facility materials or stormwater run-on to determine housekeeping needs. Any identified debris, waste, spills, tracked materials, or leaked materials will be cleaned and disposed of properly;
- Place and otherwise implement storm water filter socks, of similar stormwater BMP, in place to assist preventing the release of pollutants from the premises; if any;
- Minimize or prevent material tracking;
- Minimize dust generated from industrial materials or activities;
- Ensure that all facility areas impacted by rinse/wash waters are cleaned as soon as possible;
- Cover all stored industrial materials that can be readily mobilized by contact with stormwater when rain is imminent;
- Contain all stored non-solid industrial materials or wastes (e.g., particulates, powders, shredded paper, etc.) that can be transported or dispersed via by the wind or contact with stormwater;
- Prevent disposal of any rinse/wash waters or industrial materials into the stormwater conveyance system;
- Minimize stormwater discharges from non-industrial areas (e.g., stormwater flows from employee parking area) that contact industrial areas of the facility; and
- Minimize authorized NSWDs from non-industrial areas (e.g., potable water, fire hydrant testing, etc.) that contact industrial areas of the facility. All Ways Metal Recycling SWPPP -15- September 24, 2018 WDID# 9 37i027211 WDID # 9 37i027211 Prepared: September 24, 2018.

2. Preventative Maintenance. The following preventative maintenance measures will be implemented:

- Identify all equipment and systems used outdoors that may spill or leak pollutants;
- Observe the identified equipment and systems to detect leaks, or identify conditions that may result in the development of leaks;
- Establish an appropriate schedule for maintenance of identified equipment and systems (See Section 4); and
- Establish procedures for prompt maintenance and repair of equipment, and maintenance of systems when conditions exist that may result in the development of spills or leaks.

3. Spill and Leak Prevention and Response. The following spill and leak prevention and response measures will be implemented as follows:

- Establish procedures and/or controls to minimize spills and leaks;
- Develop and implement spill and leak response procedures to prevent industrial materials from discharging through the stormwater conveyance system. Spilled or leaked industrial materials will be cleaned promptly and disposed of properly;
- Identify and describe all necessary and appropriate spill and leak response equipment, location(s) of spill and leak response equipment, and spill or leak response equipment maintenance procedures; and

- Identify and train appropriate spill and leak response personnel. All Ways Metal Recycling SWPPP -16- September 24, 2018 WDID# 9 37i027211 WDID # 9 37i027211 Prepared: September 24, 2018.

4.  Material Handling and Waste Management. The following material handling and waste management measures will be implemented as follows:

- Prevent or minimize handling of industrial materials or wastes that can be readily mobilized by contact with stormwater during a storm event;
- Contain all stored non-solid industrial materials or wastes (e.g., particulates, powders, shredded paper, etc.) that can be transported or dispersed by the wind or contact with stormwater during handling;
- Cover industrial waste disposal containers and industrial material storage containers that contain industrial materials when not in use;
- Divert run-on and stormwater generated from within the facility away from all stockpiled materials;
- Clean all spills of industrial materials or wastes that occur during handling in accordance with the spill response procedures (Section X.H.1.c); and
- Observe and clean as appropriate, any outdoor material or waste handling equipment or containers that can be contaminated by contact with industrial materials or wastes.

5.  Erosion and Sediment Controls. The following erosion and sediment control measures will be implemented as follows:

- Implement effective wind erosion controls;
- Provide effective stabilization for all disturbed soils and other erodible areas prior to a forecasted storm event;
- Maintain effective perimeter controls and stabilize all site entrances and exits to sufficiently control discharges of erodible materials from discharging or being tracked off the site;
- Divert run-on and stormwater generated from within the facility away from all erodible materials; and
- If sediment basins are implemented, ensure compliance with the design storm standards in Section X.H.6. of the General Permit.

6.  Employee Training Program. An employee training program will be implemented as follows:

- Ensure that all team members implementing the various compliance activities of this SWPPP are properly trained in topics including but not limited to: BMP implementation, BMP effectiveness evaluations, visual observations, and monitoring activities;
- Prepare or acquire appropriate training manuals or training materials;
- Identify which personnel need to be trained, their responsibilities, and the type of training they will receive;
- Provide a training schedule; and

- Maintain documentation of all completed training classes and the personnel that received training in the SWPPP. The Pollution Prevention Team will be trained in implementing the various compliance activities specified in this SWPPP, and documentation of training activities is retained in SWPPP Appendix 5. To promote stormwater management awareness specific for this facility, refresher training will be provided semi-annually. Task specific training for all employees engaged in activities that have the potential to cause stormwater pollution will be conducted when new employees are hired and refresher training will be provided semi-annually. This facility is Level 1 status. Training will be performed by a QISP. The QISP will work with a qualified team member to provide information during training sessions and subsequently complete the training logs shown in Appendix 5, which identifies the site-specific storm water topics covered as well as the names of site personnel who attended the meeting. Each team member will be trained in the specific role they are responsible for undertaking.

7. Quality Assurance and Record Keeping. The following quality assurance and record keeping activities will be performed as follows:

- Develop and implement management procedures to ensure that appropriate staff implements all elements of the SWPPP, including the Monitoring Implementation Plan (SWPPP Section 5);
- Develop a method of tracking and recording the implementation of BMPs identified in the SWPPP; and
- Maintain the BMP implementation records, training records, and records related to any spills and clean-up related response activities for a minimum of five (5) years as required in the General Permit (Section XXI.J.4). Visual observations will be performed as described in SWPPP Section 5.2. Potential pollutant sources and BMPs will be inspected during visual observations, and new BMPs will be implemented as needed. Records of visual observations of BMP implementation will be retained in Appendix 3. Paper or electronic records of documents required by this SWPPP will be retained for a minimum of five (5) years from the date generated or date submitted, whichever is later, for the following items:
- Employee Training Records;
- BMP Implementation Records;
- Spill and Clean-up Related Records;
- Records of Monitoring Information " The date, exact location, and time of sampling or measurement; " The date(s) analyses were performed; " The individual(s) that performed the analyses; " The analytical techniques or methods used; and " The results of such analyses;
- Level 1 ERA Reports;
- Level 2 ERA Action Plan;
- Level 2 ERA Technical Report; and
- Annual Reports.

8. BMP Inspection and Maintenance. The General Permit requires, at a minimum, monthly observations of BMPs, along with inspections during sampling events. Monthly observations will be conducted during daylight hours of scheduled facility operating hours and on days without precipitation. A BMP observation checklist is included in the Monthly Observation Log and must be filled out for and maintained on-site with the SWPPP. BMPs will be maintained regularly to ensure

proper and effective functionality. If necessary, corrective actions will be implemented within 72 hours of identified deficiencies and associated amendments to the SWPPP will be completed.

**EXHIBIT B**

# SITE PLAN

Scale: 1" = 50'   1.61 acres

Orig: 9/24/18

**BRASH INDUSTRIES**

WDID# 9 37I027211
All Ways Metal Recycling
1425 N Magnolia Ave
El Cajon, CA 92020
619-390-6637

90 %   Impervious

★ Hazardous Waste
◇ Air Compressor
⊠ Trash Dumpster

⬤ Sample Point (DP#)
+ Nearest Water Body
■ Storm Drain

▨ Crushed Rock

---

+ Forester Creek: 0.75 mi west

■ 160 feet south

N. Magnolia Ave

Block Wall

Scrap Pile

Fence

Vehicle Scrap Storage

Drainage Area 2

Fence
Fence

Storage Area

Fence

DP2: South Gate

Truck Box

Truck Box

Storage

Storage

Tire Storage (Covered)

Cutting Area (Covered)

Scrap Storage

326 ft

Berm

Storage

Shear Machine

Storage

Baler (x2)

Copper

e-Waste

Antifreeze, gasoline, waste oil

★

Scale

Office

CRV

Baler

Scale

Loading/ Unloading

Drainage Area 1

Parking

Fence   Gate   Fence   Gate   Berm   Gate   Berm

AC Unit Scrap

Scrap Storage

Storage

Berm

273 ft

DP1: North Fence

Fence

N